# IN THE UNTIED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

WARREN G. LOW and )
THOMAS K. TKACH, )
                 )
       Plaintiffs, )
                 )
v. )       Case No. CIV-18-305-SLP
                 )
OMNI LIFE SCIENCE, INC. )
GEORGE CIPOLLETTI, )
ELIZABETH CIPOLLETTI, and )
JOHN DOES 1-10, )
                 )
       Defendants. )

# O R D E R

Before the Court is the Motion to Dismiss Counts II, III, and IV of Plaintiffs'

Amended Complaint [Doc. No. 14] filed by Defendants OMNI Life Science, Inc., George

Cipolletti, and Elizabeth Cipolletti. It is at issue. *See* Resp., Doc No. 19; Reply, Doc. No.

22. These named defendants seek dismissal of Plaintiffs' second, third, and fourth causes

of action—for fraud, negligent misrepresentation, and negligence performance of contract,

respectively—based on Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6).[1]  Mr.

Cipolletti and Ms. Cipolletti also seek dismissal of all claims asserted against them based

on the fiduciary shield doctrine under Rule 12(b)(6) and based on the Court's lack of

personal jurisdiction over them under Rule 12(b)(2). Finally, Defendants assert that the

---

[1] It is unclear from Plaintiffs' Amended Complaint whether the negligent performance of
contract claim is asserted against OMNI only, or also against Mr. Cipolletti and Ms.
Cipolletti as well. *See* Am. Compl. ¶¶ 84-89, Doc. No. 9 (referencing "Defendants").
Because the Court is dismissing the negligent breach of contract claim  regardless of which
defendants it is asserted against, the Court need not resolve this question.

claims asserted against the John Doe defendants—who are "officers, directors or shareholders of OMNI"—should be dismissed as improperly brought. Am. Compl. ¶ 6, Doc. No. 9. Defendants do not seek dismissal of Plaintiffs' breach of contract claim (the first count in the Amended Complaint), which is asserted against OMNI only.

Plaintiffs invoke the Court's subject-matter jurisdiction under 28 U.S.C. § 1332(a).

## I.    Background[2]

Plaintiffs are medical doctors who entered into a product development and clinical surgical consulting service agreement with OMNI. Pursuant to that agreement, Plaintiffs were to provide consulting services to OMNI related to knee and hip reconstruction and replacement products in exchange for certain percentages of OMNI's net sales of such products. These royalty payments were to be made at least annually, and within 60 days after OMNI's annual calculation of its net sales, subject to market-caused barriers to payment that might arise, with such payment timing changes to be reasonably consented to by Plaintiffs. The gravamen of Plaintiffs' lawsuit is that the payments were not made or, when made, were not made timely. Plaintiffs also claim they were misled by Defendants about calculation of these payments and when they would be paid.

From February 2010 through July 2017, OMNI—via various officers or employees—sent at least 28 communications to Plaintiffs regarding calculation of the amounts owed by OMNI to Plaintiffs and when such payments would be made. Ten of

---

[2] The factual summary herein is taken from Plaintiffs' Amended Complaint [Doc. No. 9] and accepted as true for purposes of deciding Defendants' motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

these communications came from Mr. Cipolletti and five came from Ms. Cipolletti. The remainder were sent by other OMNI officers or employees not named as defendants in this action. In its communications regarding the royalty payments, OMNI (per Plaintiffs) "improperly and deceitfully calculat[ed Plaintiffs'] Royalties . . . by improperly deducting the average cost of goods sold, sales management compensation and related expenses, medical device taxes and shipping revenues from the amount used to calculate [Plaintiffs'] royalties" and by "improperly exclud[ing] amounts invoiced to and collected from the Products used by surgeons at St. Anthony's Bone and Joint Hospital" and "amounts invoiced for and collected from the Apex Posterior Stabilized Knee System," "the Apex Revision Knee System," "the Apex Revision Tibia," "the Apex Modular Tibia," and for "the license OMNI sold to its affiliate . . . to manufacture, distribute and sell as many of the Products as [the affiliate] wishe[d] in multiple countries." *Id.* ¶¶ 26, 29-35. Plaintiffs also assert that Defendants misrepresented to them when royalty payments would be made in these communications.

Mr. Cipolletti and Ms. Cipolletti are two of OMNI's officers and are residents of Massachusetts and Pennsylvania, respectively.[3] Plaintiffs allege Mr. Cipolletti "made

---

[3] Mr. Cipolletti's role with OMNI is unclear. In different portions of their Amended Complaint [Doc. No. 9], Plaintiffs describe him as "OMNI's Chief Technology Officer" (¶ 4), "OMNI's President and Chief executive Officer" (¶ 45), "OMNI's Chief Executive Officer" (¶ 53), "OMNI's President and Chief Technology Officer" (¶ 61), and "OMNI's Founder and Chief Technology Officer" (¶ 64). Plaintiffs also reference Rick Randall as being "OMNI's CEO," as opposed to that position being occupied by Mr. Cipolletti. *Id.* ¶ 66. Ms. Cipolletti is "OMNI's General Counsel and Compliance Officer." *Id.* ¶ 5. Defendants indicate that Mr. Cipolletti is OMNI's chief technology officer and that Ms. Cipolletti is its general counsel. *See* Mot. 1, Doc. No. 14. The specific officer position(s) occupied by Mr. Cipolletti is not determinative for the issues addressed herein.

several trips to Oklahoma in connection with the Product Development and Clinical Surgical Consulting Services Agreement Plaintiffs entered into with . . . OMNI" and also made multiple false promises to Plaintiffs regarding when royalty payments would be made. *Id.* ¶ 4. Mr. Cipolletti sent Plaintiffs multiple communications relating to royalties owed by OMNI to Plaintiffs which Plaintiffs allege to have been intentionally misleading.

Plaintiffs allege that Ms. Cipolletti "sent [them] numerous false 'Statements of Account' in connection with the Product Development and Clinical Surgical Consulting Agreement Plaintiffs entered into with . . . OMNI" and "also sent letters to Plaintiffs . . . in Oklahoma[] which . . . contained false and deceptive statements"—presumably the five specific communications referenced *supra*. *Id.* ¶ 5.

## II. Pleading standard

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must determine whether the plaintiff has stated claims upon which relief may be granted. Under Rule 8(a)(2), a pleading is to contain "a short and plain statement of [each] claim showing that the pleader is entitled to relief." While Rule 8(a)(2) "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As such, "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555. In essence, a plaintiff must "nudge[] [his] claims across the line from conceivable to plausible" in order to survive a motion for dismissal. *Id.* at 570.

To assess the sufficiency of claims made by a plaintiff, a two-pronged approach is deployed. First, "a judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint." *Twombly*, 550 U.S. at 572 (quotation marks and citation omitted). A court need not, however, accept the veracity of "mere conclusory statements." *Iqbal*, 556 U.S. at 678. Second, in light of the well-pleaded factual allegations, the court must determine whether "a complaint states . . . plausible claim[s] for relief." *Id.* at 679.

In addition to Rule 8(a)'s generally applicable pleading requirements, certain claims "must state with particularity the circumstances constituting fraud or mistake," though "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). At bottom, a "complaint alleging fraud [must] set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quotation marks and citation omitted). The rule's "purpose is to afford defendant[s] fair notice of plaintiff[s'] claims and the factual ground[s] upon which they are based." *Id.* (quotation marks and citation omitted).

## III. Analysis and discussion

### A. Defendants' personal jurisdiction arguments

In a diversity case, a federal district court "may exercise personal jurisdiction over a defendant who is subject to the jurisdiction of a state court in the state where the federal court is located." *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013) (quotation marks omitted) (citing Fed. R. Civ. P. 4(k)(1)(A)). The Court must therefore apply state

law, by which "[t]he Oklahoma legislature has authorized Oklahoma courts to 'exercise jurisdiction on any basis consistent with the [Oklahoma] Constitution . . . and the Constitution of the United States.'" *Id.* (quoting Okla. Stat. tit. 12, § 2004(F)). Because Plaintiffs allege only contacts-based jurisdiction and there is no allegation that jurisdiction over Defendants would violate the Oklahoma Constitution, the Court applies a well-known standard: "[D]efendants must have minimum contacts with [Oklahoma], such that having to defend a lawsuit [in Oklahoma] would not offend traditional notions of fair play and substantial justice." *Id.* (quotation marks and citation omitted). Plaintiffs' burden at this stage of litigation is "light." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Because Defendants have not submitted evidence to contradict Plaintiffs' allegations in the Amended Complaint, the Court accepts as true the well-pleaded facts therein to determine whether there is a prima facie showing of personal jurisdiction. *See id.*

Here, Plaintiffs assert the existence of both general contacts-based jurisdiction and specific contacts-based jurisdiction as to Mr. Cipolletti and Ms. Cipolletti. *See* Am. Compl. ¶ 9, Doc. No. 9. But Plaintiffs have not indicated the existence of the "limited set of affiliations with a forum [to] render" either Mr. Cipolletti or Ms. Cipolletti "amenable to all-purpose jurisdiction" in the State of Oklahoma. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile" (*id.*)—here, Massachusetts for Mr. Cipolletti and Pennsylvania for Ms. Cipolletti. *See* Am. Compl. ¶¶ 4-5, Doc. No. 9. Plaintiffs have not alleged facts to support even the prima facie existence of general jurisdiction over Mr. Cipolletti or Ms. Cipolletti in Oklahoma, and the Court finds that it lacks such jurisdiction.

The Court therefore turns to whether Plaintiffs have alleged facts supporting specific contacts-based jurisdiction as to Mr. Cipolletti and Ms. Cipoletti. In its analysis, the Court considers: "(1) whether the defendant purposefully directed [his or her] activities at residents of the forum state; (2) whether the plaintiff[s'] injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend traditional notions of fair play and substantial justice." *Newsome*, 722 F.3d at 1264. For the first requirement, "purposeful direction has three elements: (a) an intentional action that was (b) expressly aimed at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum state." *Id.* at 1264-65 (quotation marks and citation omitted). For the second requirement (the arising-from requirement), the Court—applying the most restrictive test—"examine[s] whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff[s'] claim[s]." *Id.* at 1270 (quotation marks and citation omitted). Finally, for the third requirement, the Court's fair-play-and-substantial-justice analysis involves five factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Id.* at 1271 (quotation marks and citation omitted).

### 1. Mr. Cipolletti

Plaintiffs allege that Mr. Cipolletti made several trips to Oklahoma regarding Plaintiffs' agreement with OMNI, that he made promises to Plaintiffs while Plaintiffs were in Oklahoma, and that he sent ten different communications regarding Plaintiffs'

agreement with OMNI to them in Oklahoma. Plaintiffs have alleged that Mr. Cipolletti's communications with them were intentional (*see e.g.*, Am. Compl. ¶ 45, Doc. No. 9 (indicating that Mr. Cipolletti's letter made a "material[] represent[ation]")) and were aimed at them. There is no indication that Mr. Cipolletti may have been unaware of Plaintiffs' location; the agreement executed by Mr. Cipolletti on behalf of OMNI was "entered into . . . in Oklahoma County, Oklahoma." *Id.* ¶¶ 1-2. And the agreement stated both that Dr. Low was "a physician duly licensed to practice medicine in the state of Oklahoma" and that notices required by the agreement should be sent to him in Oklahoma. Product Development & Clinical/Surgical Consulting Services Agreement, Doc. No. 9-1. Moreover, there is no indication that any injury caused by Mr. Cipolletti's actions would be felt by Plaintiffs other than where they resided—in Oklahoma. Plaintiffs have made a prima facie showing that Mr. Cipolletti purposefully directed actions toward Oklahoma.

Moving to the arising-from requirement, the contacts at issue—principally, Mr. Cipolletti's communications with Plaintiffs regarding calculation of the amounts owed by OMNI to Plaintiffs and when such payments would be made, as well as his travels to Oklahoma "in connection with the Product Development and Clinical Surgical Consulting Services Agreement Plaintiffs entered into" (Am. Compl. ¶ 4, Doc. No. 9)—are relevant to the merits of Plaintiffs' claims against him. Indeed, these communications are the entire basis of Plaintiffs' fraud and negligent misrepresentation claims against him, and his other actions regarding Plaintiffs' agreement are likewise relevant. At the motion-to-dismiss stage, these assertions adequately allege that Mr. Cipolletti purposefully directed activities toward Oklahoma and that Plaintiffs' alleged injuries arose from such actions.

Mr. Cipolletti does not satisfy his burden of showing that the Court's exercise of personal jurisdiction over him would offend traditional notions of fair play and substantial justice. *See id.* at 1271. Mr. Cipolletti provides no compelling argument that he would be unduly burdened by defending this lawsuit in Oklahoma,[4] that Oklahoma lacks an interest in resolving a dispute involving alleged fraud against two of its residents, that Plaintiffs lack an interest in the convenient and effective relief that can be provided by this Court, that this controversy can be more efficiently resolved in a different forum, or that a substantive social policy points toward a more appropriate forum.

This case is different from *Walden v. Fiore*, 571 U.S. 277 (2014), in which the only connection between the Georgia defendant and the forum (Nevada) was that the plaintiffs happened to be present in Nevada while the defendant was holding their money in Georgia. Importantly, the defendant had "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id.* at 289. Here, in contrast, Mr. Cipolletti traveled to, contacted persons in, and sent correspondence to Oklahoma. The *Walden* defendant did not direct his actions toward any specific forum but Georgia. *See id.* at 288-89. Here, Mr. Cipolletti aimed his actions toward, specifically, Oklahoma.

Accordingly, the Court finds that it has personal jurisdiction over Mr. Cipolletti. Requiring him to litigate in Oklahoma would not result in him being forced to "account for

---

[4] "As in any case in which the parties reside in different fora, one side must bear the inconvenience of litigating 'on the road.' While admittedly a burden, defendants have not indicated that their defense of this case would be hindered by the territorial limits on [this] court's power to subpoena relevant witnesses, or indeed hampered in any other significant way." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1081 (10th Cir. 2008).

merely 'random, fortuitous, or attenuated contacts' with" this State. *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

## 2. Ms. Cipolletti

The activities purposefully directed toward Oklahoma by Ms. Cipolletti are less indicative that an exercise of personal jurisdiction is proper. Indeed, Plaintiffs' only allegations regarding Ms. Cipolletti are that she authored five communications regarding payments due to Plaintiffs from OMNI. Unlike Mr. Cipolletti, Ms. Cipolletti did not travel to Oklahoma. (At least no such travel is alleged). Accordingly, Ms. Cipolletti's contacts with Oklahoma are weaker, and Plaintiffs have not established a prima facie case for the Court's personal jurisdiction over Ms. Cipolletti.

Her circumstances are akin to those in *DCA Services, Inc. v. Communications III, Inc.*, in which an individual defendant, acting on behalf of certain corporate defendants, negotiated a plan for payments due from the corporate defendants to the plaintiff. *See* No. CIV-15-256-D, 2016 WL 815329, at *1 (W.D. Okla. Feb. 29, 2016). The plaintiff alleged that the individual defendant falsely represented the health of the defendant corporations and their likelihood to remain in business, and that the plaintiff relied on the fraudulent representations to its detriment. The plaintiff alleged that personal jurisdiction was proper over the individual defendant because he knew that the agents with whom he negotiated were located in Oklahoma. Judge DeGiusti disagreed; applying *Walden* and *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178 (10th Cir. 2014), he found that "the telephone conferences and electronic mail communications between [the p]laintiff (in Oklahoma) and [the individual defendant] (in Ohio) [were]

insufficient to establish minimum contacts necessary for the exercise of personal jurisdiction over a nonresident defendant." *Id.* at *4.

The same is true for Ms. Cipolletti. Plaintiffs offer five communications between Plaintiffs and Ms. Cipolletti—half the number of Mr. Cipolletti and without any travel by her to Oklahoma. The collective significance of these communications is insufficient to meet the standard of minimum contacts between Ms. Cipolletti and Oklahoma. Accordingly, the Court finds that it lacks personal jurisdiction over Ms. Cipolletti.

### 3.    Fiduciary shield doctrine

Defendants also argue that the fiduciary shield doctrine protects Mr. Cipolletti and Ms. Cipolletti from the Court's personal jurisdiction.[5] "Under the fiduciary shield doctrine," where adopted, "a nonresident corporate agent generally is not individually subject to a court's jurisdiction based on acts undertaken on behalf of [a] corporation." *Newsome*, 722 F.3d at 1275 (quotation marks and citation omitted). Whether the fiduciary shield doctrine applies, and how, is a matter of state law, not a matter of federal due process (and thus not a part of the minimum contacts analysis). *See id.* at 1276, 78. It has been neither adopted nor rejected by the Oklahoma Supreme Court. *See id.* at 1278-79.

Defendants provide no convincing argument that Oklahoma would adopt the fiduciary shield doctrine. Oklahoma, as previously noted, extends personal jurisdiction to the extent "consistent with the Constitution of [Oklahoma] and the Constitution of the

---

[5] Defendants conflate the fiduciary shield doctrine with the no-imputed-contacts rule. *See* Reply 8, Doc. No. 22. As explained at length in *Newsome*, the two concepts are distinct. *See* 722 F.3d at 1275-78. The latter is not at issue in this case.

United States." *Id.* at 1264 (quoting Okla. Stat. tit. 12, § 2004(F)).  A determination that the fiduciary shield doctrine applied would be inconsistent with § 2004(F) because the doctrine is not required by due process.  *See id.* at 1278; *see also id.* at 1276 (indicating that although employees' contacts with the forum state "are not to be judged according to their employer's activities" therein, their "status as employees does not somehow insulate them from jurisdiction" (quotation marks and citations omitted)).  Applying the fiduciary shield doctrine would limit the reach of personal jurisdiction to some distance shorter than that allowed by § 2004(F).  Judicially imposing such a limitation, absent any indication that the legislature intended as much, is not within the Court's purview.  *See Finstuen v. Crutcher*, 496 F.3d 1139, 1148 (10th Cir. 2007) ("[A federal court is to] interpret state laws according to state rules of statutory construction.  Oklahoma courts construe statutes according to the legislative intent as expressed in both the language and purpose of the statute . . . .  The Court presumes that the Legislature expressed its intent and that it intended what it expressed.  Statutes are interpreted to attain that purpose and end championing the broad public policy purposes underlying them. . . .  The cardinal rule is to begin with consideration of the language used." (quotation marks and citations omitted)).

In addition, recent jurisprudence lends doubt to the doctrine's vitality.  As stated by Judge Friot: "[T]he fiduciary shield doctrine, never much more than a weed in the judicial garden in the first place, was interred, at least for jurisdictions that exert long-arm jurisdiction to the full extent permitted by the Due Process Clause, by Justice Rehnquist, writing for a unanimous Court in *Calder*." *Producers Coop. Oil Mill v. DFW Biodiesel, Inc.*, No. CIV-11-1170-F, 2012 WL 12863166, at *4 (W.D. Okla. Feb. 7, 2012) (discussing

*Calder v. Jones*, 465 U.S. 783 (1984)); *see Young v. E. Tex. Med. Ctr. Reg'l Healthcare Sys., Inc.*, No. 17-CIV-101-RAW-JFJ, 2017 WL 7731212, at *4 (N.D. Okla. Nov. 6, 2017) (same); *cf. Newsome* 722 F.3d at 1278-79 ("[W]e question whether we can predict with any confidence that Oklahoma courts would graft the fiduciary shield doctrine into a long-arm statute intended to reach as far as due process allows." (declining to decide whether Oklahoma would adopt the doctrine generally, and instead only determining it would not apply in a case involving a breach of fiduciary duty claim)). Seeing no convincing argument that Oklahoma would adopt the fiduciary shield doctrine in applying § 2004(F), the Court does not find the fiduciary shield doctrine applicable in this case.[6]

---

[6] To the extent the fiduciary shield doctrine *could* apply, the Plaintiffs' allegations against Mr. Cipolletti and Ms. Cipolletti are significantly more robust than those against the defendants in the authority principally relied on by Defendants. *See* Mot. 11, Doc. No. 14. In *Polovino v. International Brotherhood of Electrical Workers*, the allegations against the individual defendant were nothing more than a brief reference in an introductory section that only "provide[d] a cursory and disjointed narrative of the alleged wrongful conduct" in a two-and-a-half-page complaint that "fail[ed] to identify what laws [the p]laintiffs believe[d] . . . [the individual defendant had] violated." No. 15-CV-23-JHP-PJC, slip. op. at 2, 5 (N.D. Okla. Aug. 7, 2015). In addition, the *Polovino* court did not decide that the fiduciary shield doctrine applied; it instead indicated that "assuming it does, [the individual defendant]'s contacts with Oklahoma [could ]not form the basis for exercising personal jurisdiction over him," while also dismissing the claims against the individual defendant due to the plaintiffs' failure to state a claim under Rule 12(b)(6) and the lack of timely service under Rules 4(m) and 12(b)(5). *Id.* at 6, 10-12. Plus, a fraud exception to the fiduciary shield doctrine may exist when a plaintiff alleges, as here, that an individual defendant "personally took part in the commission of a tort, even if he acted on behalf of a corporation." *Shotwell v. Crocs Retail, Inc.*, No. 07-CV-313-CVE-PJC, 2007 WL 2446579, at *3 (N.D. Okla. Aug. 23, 2007); *cf. id.* at *4 ("When a corporate officer intentionally directs his actions towards the forum state and is the primary participant in the alleged wrongdoing, those actions can form the basis for asserting personal jurisdiction over the corporate officer."). None of the other circumstances in which Defendants assert the doctrine's principles were utilized included fraud claims. *See* Reply 9, Doc. No. 22.

**B.     Defendants' Rule 8(a), 9(b), and 12(b)(6) arguments**

**1.     Plaintiffs' fraud claim**

The parties agree that Plaintiffs' fraud claim is subject to Oklahoma law.  *See* Mot. 5, Doc. No. 14; Resp. 5, Doc. No. 19.  Thus, to prevail, Plaintiffs must show:

> 1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied on by the other party to his (or her) own detriment.

*Bowman v. Presley*, 2009 OK 48, ¶ 13, 212 P.3d 1210, 1218.[7]  These "elements . . . help to determine whether Plaintiff[s] ha[ve] set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

To meet Rule 9(b)'s particularity requirement, a "complaint alleging fraud [must] set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch*, 203 F.3d at 1236 (quotation marks and citation omitted).  Here, Defendants acknowledge that Plaintiffs have identified numerous statements that they allege were false, who made such statements, when the statements were made, and what the statements included.  But Defendants fault Plaintiffs for "fail[ing] to identify *which* statements were improperly calculated, *who* made the improper calculations, *how* the people making the calculations knew they were inaccurate, *how* the Plaintiffs relied on any false statement, and *what* injury the Plaintiffs suffered." Mot. 6, Doc. No. 14.

---

[7] Defendants cite *Lillard v. Stockton*, 267 F. Supp. 2d 1081 (N.D. Okla. 2003), for the same requirements, but enumerated differently.  The Court has opted for a most recent pronouncement by the Oklahoma Supreme Court of the elements for fraud.

Defendants ask too much of Plaintiffs' pleading. Plaintiffs have identified the time, place, contents, communicator, and effect of each alleged-to-be-false statement. That is all that Rule 9(b) requires. *See Koch*, 203 F.3d at 1236. To the extent Defendants seek information regarding the calculations included in the statements that Plaintiffs allege were false, the relevant question for the Court's Rule 9(b) analysis is whether Plaintiffs have identified the person making the statement, not the person who performed the calculation eventually included as one part of the statement. *See id.* Rule 9(b)'s "purpose is to afford defendant[s] fair notice of plaintiff[s'] claims and the factual ground[s] upon which they are based." *Id.* (quotation marks and citation omitted). Plaintiffs have done so.

Defendants' other complaints about Plaintiffs' pleading fail as well. Defendants asset that Plaintiffs must identify which statements included improper calculations. *See* Mot. 6, Doc. No. 14. But Plaintiffs have done so, alleging that all of the statements specified in the Amended Complaint were false. *See* Am. Compl. ¶¶ 71, 73, Doc. No. 9. Likewise, Plaintiffs have indicated how they relied on each of the allegedly false representations (by "accept[ing] the statements as true and correct and . . . not tak[ing] any actions, . . . [and] not demand[ing] full payment") and what injuries they suffered ("no[t] get[ting] full payment" owed to them sooner or at all). *Id.* ¶ 75.

Defendants argue that Plaintiffs' intent allegations are not pleaded with sufficient particularity and that they are undercut by other allegations in the Amended Complaint that show Defendants' good faith. As to the former argument, "intent . . . may be alleged generally," as Plaintiffs have done. Fed. R. Civ. P. 9(b). As to the latter argument, the only question before the Court at this stage of litigation is whether Plaintiffs have "nudged

their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Balancing alleged facts which support Plaintiffs' allegations with those that cast doubt on Plaintiffs' allegations is not appropriate in deciding a Rule 12(b)(6) motion.

Defendants also assert that Plaintiffs have not pleaded reliance with adequate particularity because Plaintiffs have alleged merely that they "acted in reliance upon Defendants' representations and accepted [Defendants'] statements as true and correct and did not take any actions, did not demand full payment [and did not] get full payment." Am. Compl. ¶ 75, Doc. No. 9. Plaintiffs' allegations are sufficient. "[R]eliance may be shown by factual allegations evincing action or inaction," as Plaintiffs allege here. *Hitch Enters., Inc. v. Cimarex Energy Co.*, No. CIV-11-13-W, 2012 WL 12863013, at *7 (W.D. Okla. Oct. 10, 2012). It is unclear what additional level of particularity Plaintiffs could add in these circumstances beyond stating (as they have) that they accepted Defendants' representations as true and declined to demand immediate payments accordingly. The sufficiency of Plaintiffs' allegations also is bolstered by the particularity of their other fraud allegations. *See Foster v. Merit Energy Co.*, No. CIV-10-758-F, 2010 WL 9039558, at *1 (W.D. Okla. Oct. 22, 2010) (finding allegations sufficiently particular when "plaintiffs did not expressly allege that they relied on the check foils and other information supplied to them by defendant, [but] such reliance [could] be reasonably inferred from the [complaint's other] allegations").

Finally, Defendants assert that Plaintiffs' alleged injuries ("actual and consequential damages in excess of $75,000.00" (Am. Compl. ¶ 76, Doc. No. 9)) are not the type recoverable in a fraud claim because they are merely contract damages. This argument is

more appropriate for a summary judgment motion, when additional information regarding the types of damages claimed by Plaintiffs is available, and the Court declines to rule on the issue at this time.[8]

### 2. Plaintiffs' negligent misrepresentation and negligent performance of contract claims

The parties agree that Plaintiffs' negligent misrepresentation and negligent performance of contract claims are subject to California law, so the Court assumes that California law applies. *See* Mot. 9, Doc. No. 14; Resp. 18, Doc. No. 19; *Union Standard Ins. Co. v. Hobbs Rental Co.*, 566 F.3d 950, 952 (10th Cir. 2009) (indicating that when the parties agree what State's laws apply, the Court may "proceed from the same assumption"). Defendants assert that California's economic loss rule bars Plaintiffs' negligent misrepresentation and negligent performance of contract claims by limiting Plaintiffs' recoveries for these claims to contract damages.

As explained by the California Supreme Court (in a breach of warranty case):

> Economic loss consists of damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property. Simply stated, the economic loss rule provides: Where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his

---

[8] Defendants spend half of their reply brief [Doc. No. 22] arguing that Plaintiffs' fraud claim is a recharacterized version of their contract claim not cognizable as a matter of law because identical conduct underlies both claims. Defendants did not include this argument in their motion, instead only distinguishing between the fraud claim and the contract claim in relation to Plaintiffs' claimed damages—under the proposition that Plaintiffs' fraud claim fails to meet the particularity requirement of Rule 9(b). Defendants' argument in their reply brief is substantially broader, and the Court declines to address it at this time because it was not included in Defendants' motion. *Cf. United States v. Wayne*, 591 F.3d 1326, 1336 n.9 (10th Cir. 2010) (declining to address an argument raised for the first time in a reply brief).

remedy is said to be in contract alone, for he has suffered only economic losses. This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts. The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise.

*Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 272-73 (Cal. 2004) (quotation marks and citations omitted). Summarizing an earlier decision—*Erlich v. Menezes*, 981 P.2d 978 (Cal. 1999)—relied on by Plaintiffs (*see* Resp. 18-19, Doc. No. 19), the *Robinson Helicopter* court explained those "harm[s] above and beyond a broken contractual promise" which allow for both contract and tort actions:

[A] party's contractual obligation may create a legal duty and . . . a breach of that duty may support a tort action. . . . Conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law.

. . . Tort damages have been permitted in contract cases where a breach of duty directly causes physical injury; for breach of the covenant of good faith and fair dealing in insurance contracts; for wrongful discharge in violation of fundamental public policy; or where the contract was fraudulently induced. In each of these cases, the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm.

With respect to situations outside of those set forth above, . . . a tortious breach of contract may be found when (1) the breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach the contract are tortious, involving deceit or undue coercion; or (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages. Focusing on intentional conduct gives substance to the proposition that a breach of contract is tortious only when some independent duty arising from tort law is violated. If every negligent breach of a contract gives rise to tort damages the limitation would be meaningless, as would the statutory distinction between tort and contract remedies.

*Robinson Helicopter*, 102 P.3d at 272-274 (quotation marks and citations omitted).

Applying the economic loss rule, the Court agrees that Plaintiffs' negligent performance of contract claim is barred. Plaintiffs have not alleged (i) physical injury, (ii) breach of an insurance contract, (iii) wrongful discharge, (iv) fraudulent inducement, (v) fraud, conversion, deceit, or undue coercion as a basis for their negligent performance of contract claim, or (vi) intent or knowledge of "severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages." *Id.* at 273-74. Nor have Plaintiffs alleged—with respect to their negligent performance of contract claim—an "independent duty arising from tort law." *Id.* at 274. Plaintiffs only allege that Defendants were negligent in "failing to properly calculate the Royalties OMNI owed to [Plaintiffs]"—the same alleged act constituting the alleged breach in their contract claim. Am. Compl. ¶ 85, Doc. No. 9. Under the economic loss rule which "prevents the law of contract and the law of tort from dissolving one into the other" (*Robinson Helicopter*, 102 P.3d at 273), "a plaintiff may not recover in tort based solely on allegations that a contract was negligently performed." *Rex Inv. Co. Ltd. v. S.M.E., Inc.*, No. 15-cv-2607-H-JMA, 2016 WL 4507463, at *7 (S.D. Cal. Aug. 29. 2016).

The same is not true for Plaintiffs' negligent misrepresentation claim, which is closer in kind to a common-law fraud claim than a negligence claim. Unlike Plaintiffs' negligent performance of contract claim, their negligent misrepresentation claim requires a showing of intent, allowing the claim to stand beside and separate from the contract claim. *See Robinson Helicopter*, 102 P.3d at 274; *Guzman v. Nationstar Mortg. LLC*, No.

18cv2531-WQH-RBB, 2019 WL 2436456, at *12 (S.D. Cal. June 11, 2019) ("The elements for negligent misrepresentation are: '(1) representation as to a material fact, (2) representation is untrue, (3) regardless of actual belief, the defendant made the representation without a reasonable ground for believing it true, (4) intent to induce reliance, (5) justifiable reliance by plaintiff who does not know the representation is false, and (6) damage.'" (citation omitted)).  In addition, the long-term pattern of conduct alleged by Plaintiffs is sufficient for the negligent misrepresentation claim to fit within exceptions to the economic loss rule—when either "the breach [of contract] is accompanied by a traditional common law tort, such as fraud . . . [or] the means used to breach the contract are tortious, involving deceit." *Robinson Helicopter*, 102 P.3d at 273.

## C.    Defendants' arguments regarding the John Doe Defendants

Finally, Defendants argue that Plaintiffs' "appendage of anonymous Defendants to the Amended Complaint" is improper.  Mot. 11, Doc. No. 14.  The Court agrees that Plaintiffs have not shown a need to assert claims against John Doe Defendants.  *See* Fed. R. Civ. P. 10(a).  Moreover, Plaintiffs have not served the Amended Complaint and a summons on any of the John Doe Defendants, despite more than 90 days having passed. *See id.* Rule 4(m).  Accordingly, Plaintiffs' claims against the John Doe Defendants will be dismissed.[9]  The Court does so, however, without prejudice to Plaintiffs seeking timely

---

[9] *Ottis v. Fischer Price* does not support Plaintiffs' argument that their claims against the John Doe Defendants should survive.  *Ottis* is limited to the federal question context, while this is a diversity case.  *See* 627 F. Supp. 2d 1040, 1049 (D. Neb. 2008).  And the result reached in that case—dismissal of claims against the Doe defendants for failure to timely serve them, but with the potential for their later inclusion once their identities are learned upon a proper amendment request—is the same result the Court reaches here.

leave to file a second amended complaint against additional named defendants who are "officers, directors or shareholders of OMNI" once Plaintiffs identify them, if viable bases for such claims against additional defendants exist. Am. Compl. ¶ 6, Doc. No. 9.

## IV. Conclusion

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Counts II, III, and IV of Plaintiffs' Amended Complaint [Doc. No. 14] is GRANTED IN PART and DENIED IN PART as stated herein. Plaintiffs' claims against Defendant Elizabeth Cipolletti are DISMISSED WITHOUT PREJUDICE due to the Court's lack of personal jurisdiction over her. Plaintiffs' claims against the John Doe Defendants are DISMISSED WITHOUT PREJUDICE. Plaintiffs' negligent performance of contract claim is DISMISSED WITH PREJUDICE. Plaintiffs' remaining claims against the remaining Defendants will continue in this action.

IT IS SO ORDERED this 17th day of July, 2019.

**SCOTT L. PALK**
**UNITED STATES DISTRICT JUDGE**